IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| United States of America, | CRIMINAL NO. 3:12-897-CMC |
| v. | **OPINION AND ORDER** |
| Jacquan Olando Jones, | |
| Defendant. | |

Defendant filed a motion in this court pursuant to 28 U.S.C. § 2255, challenging his conviction for a violation of 18 U.S.C. § 924(c). ECF No. 300. The Government filed a motion to dismiss or for summary judgment. ECF No. 315. Defendant filed a response in opposition to summary judgment. ECF No. 341.[1]

**I. Background**

On February 19, 2013, Defendant was charged in a Superseding Indictment with the following counts: 1) conspiracy to commit Hobbs Act Robbery; 2) conspiracy to possess with intent to distribute cocaine; 3) attempt to possess with intent to distribute cocaine; 4) conspiracy to knowingly use and carry a firearm in relation to a drug trafficking crime "as set forth in Counts 2 and 3 of this Indictment," and in relation to a crime of violence "as set forth in Count 1 of this Indictment"; 5) knowing use and carrying of a firearm during and in relation to a drug trafficking crime "as set forth in Counts 2 and 3 of this Indictment," and in relation to a crime of violence "as

---

[1] This matter was held in abeyance pending the *en banc* decision of the Fourth Circuit in *United States v. Simms*, 914 F.3d 229 (4th Cir. 2019), and the decision of the Supreme Court in *United States v. Davis*, 139 S. Ct. 2319, 2336 (2019).

set forth in Count 1 of this Indictment," 11) possession with intent to distribute and distribution of a quantity of marijuana; and 6, 10, 12, 13, 14, and 15) six counts of felon in possession of a firearm. ECF No. 123.

On April 3, 2013, Defendant pled guilty, pursuant to a Plea Agreement, to Counts 1, 5, 10, and 11 of the Indictment: conspiracy to commit Hobbs Act Robbery (Count 1), a violation of § 924(c) (Count 5), felon in possession of a firearm (Count 10), and possession with intent to distribute marijuana (Count 11). ECF No. 143. The Plea Agreement noted Count 5, the § 924(c) count, charged "using/carrying firearm(s) during and in relation to, and possessing firearms in furtherance of a crime of violence and/or drug trafficking crime." *Id.* at ¶ 1. Judgment was entered on July 11, 2013. ECF No. 180. Defendant was sentenced to a total term of 180 months, consisting of 120 months as to Counts 1 and 10, 60 months as to Count 11, concurrent, and 60 months as to Count 5, consecutive. *Id.* Defendant did not appeal. On October 22, 2015, an Amended Judgment was issued pursuant to Amendment 782, reducing Defendant's sentence to 147 months: 87 months as to Counts 1 and 10, 50 months as to Count 11, concurrent, and 60 months as to Count 5, consecutive. ECF No. 254.

**II.     18 U.S.C. § 924(c)**

Title 18 U.S.C. § 924(c) provides that a defendant shall be subject to a consecutive sentence if he or she, "during and in relation to any crime of violence or drug trafficking crime. . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm. . . ." 18 U.S.C. § 924(c)(1)(A).

A "drug trafficking crime" for purposes of § 924(c) means "any felony punishable under the Controlled Substances Act (21 U.S.C. §§ 801 et seq.), the Controlled Substances Import and

2

Export Act (21 U.S.C. §§ 951 et seq.), or chapter 705 of title 46." § 924(c)(2). The statute defines a "crime of violence" as:

> an offense that is a felony and –
> (A) has an element the use, attempted use, or threatened use of physical force against the person or property of another, or
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.[2]

§ 924(c)(3).

The Fourth Circuit has held conspiracy to commit Hobbs Act Robbery cannot qualify as a crime of violence under the force clause of §924(c)(3)(A). *United States v. Simms*, 914 F.3d 229, 233-34 (4th Cir. 2019). The *Simms* court also concluded the residual clause of §924(c)(3)(B) is unconstitutionally vague and therefore void. *Id.* at 236.

On June 24, 2019, the Supreme Court also decided the residual clause of § 924(c)(3)(B) is void for vagueness. *United States v. Davis*, 139 S.Ct. 2319, 2336 (2019). In doing so, the Court rejected application of a case-specific approach for § 924(c) and applied the categorical approach.[3] *Id.* at 2327-2332.

### III. Discussion

Defendant argues his § 924(c) conviction in Count 5 was predicated on the conspiracy to commit Hobbs Act Robbery conviction in Count 1, which cannot serve as an underlying offense as it is not a crime of violence as defined in § 924(c)(3)(A), the "force clause," and §924(c)(3)(B)

---

[2] § 924(c)(3)(A) is known as the "force clause" or "elements clause" (referred to herein as the force clause) and § 924(c)(3)(B) is known as the "residual clause."

[3] *Davis* did not address the force clause issue, as the Fourth Circuit did in *Simms*, because the lower court determined conspiracy to commit Hobbs Act Robbery did not qualify under the force clause, and this holding was not appealed. *Id.* at 2325.

3

is invalid. ECF No. 300. The Government has moved for summary judgment, arguing Defendant's claim is barred by his valid guilty plea and appeal waiver, is untimely, and fails on the merits as Defendant's § 924(c) charge was based on a drug trafficking crime as well as a crime of violence. ECF No. 315-1. Defendant responded, arguing his §924(c) conviction was based only on the Hobbs Act Robbery conspiracy, not a drug trafficking crime. ECF No. 341. He also argues his appeal waiver should not be enforced, and the motion is timely. *Id.* at 5-6.

The court finds Defendant's § 924(c) conviction remains valid because it was also predicated on a drug trafficking crime. Therefore, even though conspiracy to commit Hobbs Act Robbery no longer qualifies as a crime of violence under the now invalidated residual clause or under the force clause of § 924(c), the § 924(c) conviction stands as also based on an underlying offense that constitutes a drug trafficking crime.

*a. Analysis*

Defendant was charged with knowingly using or carrying a firearm during and in relation to, and possessing a firearm in furtherance of, a drug trafficking crime **and** a crime of violence. ECF No. 123 at 5 ("That on or about October 30, 2012, in the District of South Carolina, the Defendants . . . did knowingly use and carry firearms during and in relation to, and did possess firearms in furtherance of, a drug trafficking crime as set forth in Counts 2 and 3 of this Indictment, and did knowingly use and carry firearms during and in relation to, and did possess firearms in furtherance of, a crime of violence as set forth in Count 1 of this Indictment, which are felonies prosecutable in a Court of the United States . . ."). His Plea Agreement reflects both bases for §924(c), though he did not plead guilty to either Count 2 or 3. ECF No. 143 at ¶ 1 ("The Defendant agrees to plead guilty to Counts 1, 5, 10, and 11 of the Superseding Indictment now pending . . . Count 5 charges using/carrying firearm(s) during and in relation to, and possessing firearms in

4

furtherance of a crime of violence and/or drug trafficking crime. . ."). At his change of plea hearing, the court explained the charge in Count 5 as follows:

> Court: Count 5 is a gun charge. And it charges that on or about October the 30th of 2012, that you and others, those same people, did knowingly use and carry firearms during and in relation to and did possess firearms in furtherance of a drug trafficking crime as set forth in Counts Two and Three of the indictment and that you did knowingly use and carry firearms during and in relation to and possess the firearms in furtherance of a crime of violence as set forth in Count One, . . .
> So in order to prove that charge, they would have to be able to prove that you or others, or both, knowingly used or carried a firearm during and in relation to or possessed a firearm in furtherance of Count One, Count Two, or Count Three, or you aided and abetted someone who did that, and that the underlying crime, the drug trafficking crime or the crime of violence was prosecutable in a court of the United States. Do you understand what Count Five is about and what would have to be proved to show that?
> Defendant: Yes, ma'am.

ECF No. 323 at 17-18.[4]

The Government, through ATF Special Agent Lovin, summarized the evidence against Defendant, explaining the involvement of a confidential informant:

> As the investigation continued, ATF learned that Mr. Jones had a predisposition to commit robberies prior to the September investigation. Because of that, Mr. Jones was presented with an opportunity to meet other individuals later to be determined that were ATF undercover agents to discuss a robbery of drug traffickers for approximately ten to twelve kilos of cocaine.
> During these discussions which took place on three different occasions, Mr. Jones as well as Mr. Boyce were present on two of these occasions, and Mr. Davis and Mr. Howard were present on the third meeting. Each of these meetings discussed what the robbery was, how much cocaine would be in the location. There were discussions about who would do what as far as tying up or subduing or even shooting these potential drug traffickers to obtain this ten to twelve kilos of cocaine. As the investigation continued, on October 30th, or prior to October 30th, Mr. Jones reported to other members of the robbery crew that he would not be going, he would be sending someone in his place to commit the robbery, which was Mr. Mobley.

---

[4] Count 11, possession with intent to distribute and distribution of a quantity of marijuana, took place on September 18, 2012, not October 30, and therefore is not part of the conduct in the §924(c) charge. *Id.* at 20.

5

> On October 30th, the day of the arrest and proposed robbery, Mr. Jones met with the robbery crew, to include Mr. Mobley, and during that occasion he gave Mr. Mobley a .45 caliber Taurus pistol to use in the robbery.
>
> …
>
> Court: And when the discussions were being held regarding the plan to rob the ten to twelve kilos, what if any discussion was held concerning the use of weapons in connection with the robbery?
>
> Special Agent Lovin: Specifically, Mr. Jones stated during at least one of these meetings that members should enter the residence and initially shoot at least one drug trafficker in the leg or in the knee so they would know that they meant business.
>
> …
>
> Ms. Haynes: Mr. Jones did not show up on the 30th. He was there. The confidential source indicates that he did provide the firearm that Mr. Mobley was found with, the .40 caliber Taurus, provided that to him. And I believe there was discussion between the confidential informant and Mr. Jones prior that Mr. Jones would not be going, that he would be sending Mr. Mobley in his place and that they would work out the details of their split between themselves.
>
> …
>
> Court: Okay. But during an earlier meeting, is Mr. Jones on tape discussing the plan as far as what was to be stolen, what was to be – what was the object of the robbery?
>
> Special Agent Lovin: His last conversation, which would be with the confidential source, Mr. Boyce, Mr. Mobley, and himself, was on October the 26th, four days prior to the arrest.
>
> Court: Okay. And by that time, had the plan been formulated sufficient that Mr. Jones would have known what the plan was?
>
> Special Agent Lovin: Yes. There were three meetings that he attended prior to that date where he met with the undercover agents to discuss the robbery. And at each meeting he was given an opportunity to remove himself from the conspiracy, as well as the other defendants, co-defendants in this case.
>
> …
>
> Court: So it was clear in your mind from the tapes and all of that that he was going to share in the cocaine?
>
> Special Agent Lovin: Yes. He advised Mr. Boyce and the CI that he would work out his cut with Mr. Mobley who he was sending in his stead.
>
> Court: And had they made arrangements as to how much each one was supposed to get beforehand?
>
> Special Agent Lovin: Nothing was caught on tape as far as an exact amount.

*Id.* at 33, 35-39. The court inquired of Defendant:

> Count Five indicates that there was a firearm knowingly used and carried during and in relation to a crime of violence or a drug trafficking crime. Now, do you

6

admit or deny that you gave this Taurus to Mobley to use in this what you thought was going to be a robbery of cocaine?
Defendant: No, ma'am.
Court: You did not?
Defendant: Nah. All my firearms were sold to the confidential informant that I had.
Court: Okay. So whether you owned it or not, I don't care. do you admit or deny that you handed to Mobley –
Defendant: No, ma'am. I didn't hand them to him.
Court: You were not the one that handed it to him?
Defendant: No, ma'am.
Court: So if all these other people are saying you were, you disagree?
Defendant: Yes, ma'am.
Court: Okay. All right. Do you admit or deny that you were involved in these discussions in which a plan was formulated to rob some drug dealers of ten to twelve kilos of cocaine?
Defendant: I was at three – three – three- three of the little situations, the talk situations.
Court: Okay. And do you admit that you understood from being there that the plan was to rob some drug dealers of ten to twelve kilos of cocaine?
Defendant: Yes, ma'am.
Court: And do you admit or deny that you at one of these meetings introduced Mr. Mobley and said he was going to go, you weren't going to go but he was going to go?
Defendant: Yes, ma'am.
Court: And do you admit that at one of these meetings, and I think it might have been the last one where you were there, that you made a comment that they should shoot somebody in the leg to make sure that they knew business, that you meant business?
Defendant: Yes, ma'am.
…
Court: That's fine. All I'm asking you is, did you believe at the time that they were going to take guns and use those guns to rob people of cocaine?
Defendant: Yes, ma'am.
…
Court: But did you have any agreement with Mobley that he would share whatever he got in some way with you for you introducing him to the group?
Defendant: He say he -- yes, ma'am.
…
Court: Okay. All right. It seems to met that despite the fact that he denies handing the gun to Mobley or providing the gun to Mobley on the day when he introduced Mobley to the group on the 26th that he has admitted enough other things for there to be an adequate factual basis here for all of these crimes. So if you wish to plead guilty to these crimes, then there is an adequate factual basis for it. It's up to you.
Defendant: Yes, ma'am
Court: Do you wish to plead guilty to them?

7

Defendant: Yes, ma'am.

*Id.* at 40-43, 45.

It is clear from the facts recited and from Defendant's admissions that the conduct underlying the possession of the firearms, on the same day (October 30, 2012), was a conspiracy not only to commit Hobbs Act Robbery but also to steal cocaine from the stash house: the firearms were to be carried and possessed with the intent to commit a robbery of a stash house to steal and ultimately possess with intent to distribute 10 to 12 kilograms of cocaine. After the robbery, Defendant would, according to prior negotiations between co-defendants, share in possession of multiple kilograms of cocaine with the intent to distribute. *Id.* at 39, 43; *see United States v. Fisher*, 912 F.2d 728, 730 (4th Cir. 1990) ("Intent to distribute may be inferred from . . . a quantity of drugs larger than needed for personal use."); *see also U.S. v. Young*, 609 F.3d 348, 355 (4th Cir. 2010) ("The evidence presented at trial established that Young was in possession of almost five kilograms of cocaine, a quantity that clearly was large enough to permit the jury to conclude that the drugs were intended for distribution.").

The drug trafficking crime in Count 2 of the Indictment (conspiracy[5] to possess with intent to distribute 5 kilograms or more of cocaine) was cited, along with the conspiracy to commit Hobbs

---

[5] The Fourth Circuit recently held a conspiracy to possess cocaine and cocaine base with intent to distribute in violation of 21 U.S.C. § 846 could not serve as a predicate offense for a sentencing enhancement under the Sentencing Guidelines' definition of "controlled substances offense." *United States v. Norman*, __ F.3d __, 2019 WL 3819314, at *5 (4th Cir. 2019). A controlled substance offense as defined by the Guidelines "means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense." U.S.S.G. § 4B1.2(b). Although commentary to the Guidelines included conspiracy and attempt in the definition of "controlled substance offense," the

8

Act Robbery in Count 1, as underlying offenses for the § 924(c) charge in Count 5. While Defendant did not plead guilty to Count 2, it was not necessary that Defendant be convicted of the underlying drug trafficking crime in order for his § 924(c) conviction to rest on it. Section 924(c)(1)(A) notes, in part, the drug trafficking crime or crime of violence must be one "for which the person **may be** prosecuted in a court of the United States." *See also United States v. Crump*, 120 F.3d 462, 466 (4th Cir. 1997) ("In accordance with the views of all the circuits considering the question, we hold that a defendant's conviction under §924(c)(1) does not depend on his being convicted – either previously or contemporaneously – of the predicate offense, as long as all of the elements of that offense are proved and found beyond a reasonable doubt."). In this case, Defendant was indicted for both a crime of violence in Count 1 and two drug trafficking crimes in Counts 2 and 3. The facts and colloquy with Defendant at the change of plea hearing made it clear that the §924(c) charge was predicated on Counts 1 and 2, as quoted above.[6]

---

court found that § 846 conspiracy is not generic conspiracy as it does not require an overt act. *Norman*, 2019 WL 3819314; §4B1.2(b), cmt. n.1. Section 924(c) convictions, however, can be predicated on a "drug trafficking crime," defined as "any felony punishable under the Controlled Substances Act (21 U.S.C. §§ 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. §§ 951 et seq.), or chapter 705 of title 46." § 924(c)(2). As the definition of drug trafficking crime includes any felony punishable under the Controlled Substances Act, Count 2 of the Indictment in this case qualifies as a drug trafficking crime under §924(c) and *Norman* has no application.

[6] Defendant is correct he was not advised of the elements of the drug trafficking crime in Count 2 in relation to his guilty plea to the § 924(c) offense. However, a district judge must only be subjectively satisfied there is a sufficient factual basis for a conclusion that the defendant committed all of the elements of the offense. *United States v. Ketchum*, 550 F.3d 363, 366 (4th Cir. 2008). "A district court judge taking a defendant's plea need not explain the elements of each charge to the defendant on the record." *United States v. Edgerton*, 408 F. App'x 733, 736 (4th Cir. 2011) (quoting *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005)). In this case, the facts admitted are sufficient to support a plea to § 924(c) based on Count 2. Because Defendant chose not to join

9

Therefore, even though conspiracy to commit Hobbs Act Robbery can no longer serve as an underlying offense for Defendant's § 924(c) conviction after *Simms* and *Davis*, his §924(c) conviction was not based solely on Count 1, but also on the drug trafficking crime (Count 2) committed the same day as the firearm possession. *See United States v. Hare*, 820 F.3d 93, 105-06 (4th Cir. 2016) (upholding § 924(c) conviction where the conviction was based on both a drug trafficking crime and a crime of violence).[7]

### IV.    Conclusion

Defendant's challenge to his conviction under § 924(c) fails, even though conspiracy to commit Hobbs Act Robbery can no longer serve as an underlying offense, because the § 924(c) conviction remains predicated on a drug trafficking crime. The Government's motion for summary judgment (ECF No. 315) is granted and Defendant's § 2255 motion (ECF No. 300) is hereby **dismissed with prejudice**.

### CERTIFICATE OF APPEALABILITY

The governing law provides that:

(c)(2) A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right.

(c)(3) The certificate of appealability . . . shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

---

the others on the day of the robbery, but to provide a substitute, it is questionable whether his admissions support the attempt charge in Count 3.

[7] The Government has also argued that Defendant's § 2255 motion should be dismissed as untimely and/or based on the appeal waiver. However, the court need not reach these arguments, as it has determined that Defendant's conviction for § 924(c) stands.

28 U.S.C. § 2253(c). A prisoner satisfies this standard by demonstrating that reasonable jurists would find this court's assessment of his constitutional claims is debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. *See Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003); *Slack v. McDaniel,* 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683 (4th Cir. 2001). In this case, the legal standard for the issuance of a certificate of appealability has not been met. Therefore, a certificate of appealability is **denied**.

 **IT IS SO ORDERED**.

              s/Cameron McGowan Currie
              CAMERON MCGOWAN CURRIE
              Senior United States District Judge

Columbia, South Carolina
August 26, 2019